# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**MARLO SMITH**                                                                   **PLAINTIFF**

**V.**                                       **NO. 3:20-cv-00317-ERE**

**COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

## ORDER

### I.   Introduction:

On May 15, 2018, Marlo Smith filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income benefits. *Tr. at 30*. In both applications, she alleged disability beginning on December 31, 2013. *Id*. In a decision dated January 23, 2020, an administrative law judge ("ALJ") denied Ms. Smith's applications. *Tr. at 41*. The Appeals Council denied her request for review on August 13, 2020. *Tr. at 1*.

The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Smith has requested judicial review. For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.   **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Ms. Smith, 49 years old at the time of the hearing, had not engaged in substantial gainful activity since the alleged onset date of December 31, 2013.[2] *Tr. at 32, 52*. At step two, the ALJ determined that Ms. Smith has the following severe impairments: lumbar spondylosis, osteoarthritis, asthma, degenerative disc disease and cervicalgia of the cervical spine, scoliosis, anxiety, posttraumatic stress disorder ("PTSD"), agoraphobia with panic disorder, and depression. *Tr. at 32-33*.

After finding that Ms. Smith's impairments did not meet or equal a listed impairment (*Tr. at 33*), the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) she cannot climb ladders, ropes, or scaffolds; (2) she is limited to occasional crawling and frequent overhead reaching bilaterally; (3) she must avoid concentrated exposure to heat, cold, excessive wetness, humidity, and excessive vibration, and she must avoid moderate exposure to irritants such as

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

fumes, odors, dusts, and gases, and poorly ventilated areas; (4) she can maintain concentration, persistence, and pace for two hours at a time for simple and moderately complex tasks; (5) she can understand remember and carry out simple to moderately complex work instructions and procedures; (6) she can make simple to moderately complex work-related decisions; (7) she can respond appropriate to simple and moderately demanding work settings; and (8) she is limited to routine and superficial interaction with coworkers, supervisors, and the public. *Tr. at 35.*

The ALJ next found that Ms. Smith was unable to perform any of her past relevant work. *Tr. at 39*. At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Smith's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, such as office clerk and cashier. *Tr. at 40*. Therefore, the ALJ found that Ms. Smith was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Smith's Arguments on Appeal

Ms. Smith contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the ALJ did not properly account for Ms. Smith's headaches; (2) the hypothetical that the ALJ posed to the VE did not include all of her limitations; and (3) the ALJ failed to identify or resolve a conflict between

4

the VE's testimony and the *Dictionary of Occupational Titles* (DOT). After reviewing the record as a whole, the Court finds support for Ms. Smith's final argument.

The argument that provides the basis for reversal relates to Ms. Smith's mental impairments, so the Court will limit its discussion to those impairments.[3]

Ms. Smith complained of panic attacks, depression, and anxiety. *Tr. at 38, 363-369, 2089*. She treated her mental impairments with medication, and in 2014, a consultative examiner found that those impairments would cause some difficulty in her daily mental functioning. *Id*. Specifically, the examiner stated that Ms. Smith may not be able to complete work tasks within an acceptable time frame, and that she has a limited capacity to communicate and interact in a socially appropriate manner. *Tr. at 363-369*. The ALJ found that this opinion was not persuasive. *Tr. at 38*. The ALJ found persuasive the opinions of the Disability Determination Services psychiatric experts. *Tr. at 38, 113, 134*. Those experts reviewed the records and found that Ms. Smith could perform work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience and has several variables, judgment within limits, and the supervision required is little for routine tasks but

---

[3] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.").

detailed for non-routine tasks. *Id*. Those experts classified the work as semi-skilled. *Id*.

The problem here is the vague and contradictory RFC language that the ALJ used. It appears he tried to split the middle of the medical opinions listed above. In the RFC, the ALJ listed the ability to perform "simple *and* moderately complex" tasks or "simple *to* moderately complex" tasks. Simple work typically involves few variables, concrete supervision, and limited interpersonal contact. See *Clapp v. Saul*, No. 3:19-cv-00061-JTK, 2020 U.D. Dist. LEXIS 27725 *4 (E.D. Ark. Feb. 19, 2020). In lay terms, simple work just isn't the same as moderately complex work, and it was error for the ALJ to use both terms in the hypothetical posed to the VE and in the RFC. When the RFC is unclear, steps four and five of the sequential analysis lack foundation.

The ALJ also specifically identified the work that Smith could do as unskilled (which would eliminate moderately complex tasks).[4] Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." See 20 C.F.R. §§ 404.1568(a), 416.968(b), Soc. Sec. Ruling 83-10. This

---

[4] The ALJ wrote: "To determine the extent to which these limitations erode the **unskilled** light occupational based, I asked the VE . . . ." *Tr. at 40 (emphasis added).* He clearly classified the RFC as contemplating unskilled work.

Court has, on numerous occasions, found that an RFC for unskilled work does not allow for the performance of jobs requiring Level Three reasoning.[5] *Ferguson v. Saul*, No. 3:19-cv-00242-BD, 2019 U.S. Dist. LEXIS 216303 *7 (E.D. Ark. Dec. 17, 2019) ("RFCs that more generally propose simple work with simple instructions and few changes to routine do not allow a claimant to perform Level Three reasoning jobs."); *Golatt v. Saul*, No. 3:20-cv-00119-BD, 2021 U.S. Dist. LEXIS 36115 (E.D. Ark. Feb. 26, 2021) (simple, unskilled work does not correspond to Level Three reasoning jobs).

In the face of such a conflict, an ALJ must identify the conflict, and obtain a reasonable explanation for the conflict from the VE.[6] The ALJ did not do so here. He did not ask the VE about the potential conflict, and the VE did not offer any testimony about the conflict. *Tr. at 73-76*. This was plain error, and reversal is warranted.

## IV. <u>Conclusion:</u>

It is not the Court's job to review the evidence and make an independent

---

[5] The two jobs identified by the VE were Level Three reasoning jobs, according to their DOT classifications. DOT 209.562-010; DOT 211.462-010. Level Three jobs require a worker to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations." DOT, app. C., pt. III (1991 WL 688702 (4th ed. rev. 1991).

[6] *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018).

decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the ALJ's decision. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the RFC was unclear and the ALJ did not get an adequate explanation from the VE about the conflict between his testimony and the DOT.

    IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

    DATED this 15th day of November, 2021.

                                          _____

                                          UNITED STATES MAGISTRATE JUDGE